WINTERPORT WATER COMPANY

*vs.*

INHABITANTS OF WINTERPORT.

INHABITANTS OF WINTERPORT

*vs.*

WINTERPORT WATER COMPANY.

Waldo.    Opinion May 28, 1900.

*Towns.   Water Company.   Contract.   Taxation.   Principal and Agent.   Priv. and Special Act, 1895, c. 25.*

Upon an article in a warrant for a town meeting: "To see if the town will vote to contract with a water company for hydrant service for 20 years, as

per the company's proposal," when the proposal is in writing and is submitted to the town meeting, a vote of the town thereon to pay therefor the sum of $1000 per year, for not less than 20 years, as per the company's proposal, that calls for a further payment each year of such further sum as shall equal the amount of tax assessed upon the company for that year, is valid; and a contract, containing the terms of the proposal is valid, when executed by a committee chosen by the town for the purpose, even if the enabling act of the legislature says the contract may be executed by the selectmen. The town makes the contract, and may use either its selectmen or its committee to execute it, as it may please to do.

ON REPORT.

This action was brought on an indenture, entered into between the Winterport Water Company and the town of Winterport, on the 9th day of May, 1896, to recover the sum of two hundred and fifty-eight dollars, and interest thereon; being the amount of the money tax assessed by the town on the property of said company for the year 1897.

The indenture provides "Item 13, in consideration of the construction and maintenance of said system of water works according to the foregoing agreements, said party of the second part in their said capacity, hereby agrees to pay to said company, its successors and assigns, the sum of one thousand ($1,000) dollars per year during said period of twenty (20) years for the use of the said twenty (20) hydrants as more particularly set out in this contract, and for water for the same, and for water for the purposes specified in Item 6 of this contract, and such further sum each year as shall equal the amount of tax, if any, assessed against said company, its successors and assigns, by said town of Winterport."

The declaration in the writ, among other allegations, sets forth "that the said town of Winterport, by its assessors, assessed upon the real estate of this plaintiff and upon certain personal property of this plaintiff claimed to be taxable in said town of Winterport . . . . the sum of two hundred and fifty-eight dollars; and the said assessors thereafterwards, to wit: on the fourth day of June, A. D. 1897, made a list of said taxes, so assessed against plaintiff, under their hands and committed the same to the collector of said town with a warrant of that date under the hands of said assessors for the collection of said tax." Payment of this tax

so assessed against the Water Company was duly demanded by the treasurer of the town of Winterport on the 19th day of October, 1898.

The declaration further sets forth that "said defendant has not paid such further sum for the year 1897 as was equal to the amount of the said tax assessed as aforesaid by said town of Winterport against said company, which sum became due and payable on the first day of July, 1897, to wit: the sum of two hundred and fifty-eight dollars, with interest thereon; said sum being due under and by virtue of said contract and the covenants by defendant thereto and therefor, as aforesaid, by reason and by force of the assessment aforesaid by said Winterport of said tax of two hundred and fifty-eight dollars against said company."

It was admitted that a tax was assessed against the company in 1897 by the town of Winterport, and suit is now pending for the collection of the same, and that the water company made a demand on the town for the payment of an additional amount to the Water company as rental, equal to the tax assessed in 1897.

The president of the Water company, in 1897, made a demand upon one of the selectmen of Winterport for the payment of an additional sum as rental equal to the tax assessed against the company for that year.

The case shows that no additional sum, as rental under the contract, has been paid the plaintiff by the town on account of any tax assessed against it for the year 1897.

Under the provisions of chapter 25, special laws of 1895, T. W. Vose, Fred Atwood, A. E. Fernald, S. H. Morgan, C. R. Hill, D. H. Smith, H. M. Heath, and such persons as they might associate with themselves in the enterprise, and their successors, were incorporated into a corporation by the name of the Winterport Water Company, "for the purpose of supplying the towns of Winterport and Frankfort, in the county of Waldo, and the inhabitants of said towns, with pure water for industrial, manufacturing, domestic, sanitary and municipal purposes, including extinguishment of fires."

Section 8 of said act provides—"Said corporation is hereby authorized to make contracts with the United States, and with cor-

porations and inhabitants of said towns of Winterport and Frank-
fort, or any village corporation or association in said towns, for the
purpose of supplying water as contemplated by this act; and said
towns of Winterport and Frankfort, or part thereof, are hereby
authorized by its selectmen to enter into a contract with said com-
pany for a supply of water for any and all purposes mentioned in
this act, and for such exemption from public burden as said towns
and said company may agree, which, when made, shall be legal and
binding upon all parties thereto. Any village corporation in said
towns through its assessors, is also authorized to contract with said
company for water for all public purposes."

The Winterport Water Company was duly organized, and at the
annual town meeting held on the ninth day of March, 1896, under
appropriate articles in the warrant, the town voted to exempt from
taxation the stock and property of the Winterport Water Com-
pany for a term of twenty years; and under article 39, of the war-
rant, the town directed the selectmen to contract with the Winter-
port Water Company for water for fire purposes in the village for a
term of twenty years; and under such vote the selectmen were to
determine the number of hydrants to be located and the amount to
be paid per year.

The selectmen did not exercise the authority; consequently, no
contract was made under the vote of March 9th, 1896.

No action having been taken toward the execution of the con-
tract authorized at the meeting held in March, 1896, a special town
meeting of the inhabitants of the town was called for April 22,
1896.

The warrant contained, among others, the following articles:

2nd. "To see if the town will vote to contract with the Winter-
port Water Co., for not less than (20) twenty hydrants' service for
a term twenty (20) years as per said company's proposal to act
anything relating thereto.

3d. "To see if the town will choose a committee and give to
such committee full authority to make and execute for and in
behalf of the town, a contract with the Winterport Water Co. for

carrying out the provisions of Art. 2 of this warrant or act anything relating thereto."

WINTERPORT, April 13, 1896.

The action of the town on the foregoing warrant appears by the following record. . . . .

"On motion of G. H. Dunton, voted to pay the sum of one ($1,000) thousand dollars per year to the Winterport Water Co., for not less than (20) twenty hydrants' service for not less than 20 years, as per said company's proposal. Adopted, yeas 208, nays 135.

"On motion of F. W. Haley, that a committee of three be raised and that such committee have full authority to make and execute for and in behalf of the town and in the name of the town a contract with the Winterport Water Co., whose proposal has been accepted and adopted by a vote of the town and (under) Art. 2nd of the warrant for this meeting.

"On motion of Hon. Fred Atwood, Mr. Ellery Bowden, Mr. G. H. Dunton and Mr. H. E. Fernald be the committee for and in behalf of the town, and in the name of the town to make and execute the contract with the said Winterport Water Co., agreeable to the vote accepting and adopting the proposals of said Company as taken under Art. 2nd of the warrant for this meeting."

Under and by virtue of the authority thus given, the committee appointed by the town entered into a contract with the Water company, for a supply of water for municipal purposes, as above stated.

The second case was an action of debt to recover a tax assessed for the year 1897 against the Water company, amounting to two hundred and fifty-eight dollars.

It was agreed that any evidence offered by the parties in the first case and legally admissible in the second case may be regarded and considered by the court as evidence in the latter case, and any evidence offered by parties in the second case and legally admissible in the first case may be regarded and considered by the court as evidence in the latter case.

Plea, general issue.

The defendant, in its brief statement, set forth :

" That at said Winterport, on the ninth day of May, 1896, plaintiff and defendant made a contract, which ever since has been and now is in full force and effect, whereby among other things defendant agreed to furnish and supply water to plaintiff for fire and municipal purposes, for which and in consideration thereof, plaintiff agreed to pay and allow defendant each year a sum equal to any taxes assessed against defendant by plaintiff :

" That under said contract defendant has furnished and supplied water to plaintiff and thereby defendant has paid to plaintiff the amount of such alleged tax, and was and is entitled to be allowed by said plaintiff the amount of said alleged tax :

" That said alleged tax has been paid by defendant to the plaintiff."

*N. and H. B. Cleaves, S. C. Perry ; Ellery Bowden,* for plaintiff.

Deeds and contracts, executed by an authorized agent of a person or corporation in the name of its principal, or in his own name for his principal, are in law, the deeds and contracts of such principal. R. S., c. 73, § 15 ; *Porter* v. *A. & K. R. Co.,* 37 · Maine, 349 ; *Nobleboro* v. *Clark,* 68 Maine, 87.

Our court holds " the true rule in this state is, that where a deed is executed by an agent or attorney, with authority therefor, and it appears by the deed that it was the intention of the parties to bind the principal or constituent, that it should be his deed and not the deed of the agent or attorney, it must be regarded as the deed of the principal or constituent, though signed by the agent or attorney in his own name.  In determining the meaning of the parties, recourse must be had to the whole instrument, the granting part, the covenants, the attestation clause, the sealing and acknowledgment, as well as the manner of signing.  If signed by the agent in his own name, it must appear by the deed, that he did so for his principal.   This may appear in the body of the deed, as well as immediately after the signature." *Simpson* v. *Garland,* 72 Maine, 42.

In *Bucksport & Bangor Railroad Company* v. *Buck,* 68 Maine, 85, our court says : " R. S., c. 3, § 5, as repeatedly construed by

this court, while in terms requiring the warrant to specify in distinct articles the business to be acted upon at a town meeting, leaves a large discretion to be exercised by the voters, when assembled, as to the disposition they may make of the matter submitted for their action.  The statute requires that the articles in the warrant shall distinctly apprise the voters of the subject to be considered, without prescribing any rule for their action upon it.  It is in general competent for the town to adopt or reject the proposition submitted, wholly or in part, or to adopt it with specific limitations or conditions."

The town refused to rescind the contract, but continued to appropriate money in ratification of it.  *Otis* v. *Stockton*, 76 Maine, 506.

The acceptance and use of the works under the contract for their construction is a complete waiver of all patent defects in the location or construction of the same.  Mr. Justice Brewer in *National Water Works Company* v. *Kansas City*, 10 C. C. A. 653, 666, (62 Fed. Rep. 853, 866), speaking for the court, said of the claim by the city for damages in that case on account of the inefficiency of the water works furnished by the lessor:

" It (the city) has for many years recognized and accepted this waterworks system as having been constructed in full compliance with the demands of the contract, and it is now too late to repudiate such recognition."  *Illinois Trust & Savings Bank* v. *City of Arkansas City*, 76 Fed. Rep. 292.

Contract not one for exemption from taxation.

Counsel cited:  *Portland* v. *Portland Water Co.*, 67 Maine, 135 ;  *Grant* v. *City of Davenport*, 36 Iowa, 396, 398 ; *Bartholomew* v. *City of Austin*, 85 Fed. Rep. 859 ; *Ill. Cent. R. R. Co.* v. *McLean Co.*, 17 Ill. 261 ; *Ill. Trust, etc., Bank* v. *City of Arkansas City*, 76 Fed. Rep. 271 ; *New Orleans* v. *Water Works Co.*, 36 La. 432.

Where authority is given by charter to a town to make a contract with a water company by its selectmen, such contract is valid though executed by a special committee thereunto duly authorized by vote of the town.

If the provisions of the charter as to the method of making a contract are not absolutely mandatory, but directory merely, the contract is valid although the prescribed mode is not followed. Dillon, Mun. Corp. § 449; Beach, Pub. Corp. § 252; Tiedeman, Mun. Corp. § 165; 15 Am. & Eng. Encyc. of Law, p. 1088.

Directory and mandatory statutes: *Boothbay* v. *Race*, 68 Maine, 351, 354; *Rex* v. *Toxdale*, 1 Burr. 445; *Gallup* v. *Smith*, 59 Conn. 354; *Pearce* v. *Morrill*, 2 A. & E. 96; *Cusick's Election*, 136 Pa. 459; *Bladen* v. *Phila.* 50 Pa. 464; *Mussey* v. *White*, 3 Maine, 290; *Middle Bridge Props.* v. *Brooks*, 13 Maine, 391; *Veazie* v. *Mayo*, 45 Maine, 560; *Scarborough* v. *Parker*, 53 Maine, 253; *Farmington Savings Bank* v. *Fall*, 67 Maine, 135; *Kelley* v. *Mayor, etc., of Brooklyn*, 4 Hill, 263; *Marchant* v. *Langworthy*, 6 Hill, 646; *Striker* v. *Kelly*, 7 Hill, 9; *People* v. *Village of Yonkers*, 39 Barb. 266; *Barnes* v. *Ontario Bank*, 19 N. Y. 155; *Moore* v. *Mayor, etc., of N. Y.*, 73 N. Y. 238; *Ford* v. *Clough*, 8 Maine, 345.

Without relying on the special provision given the town of Winterport under the charter of the Winterport Water Company, as amended in 1895, the town could under its general statutory powers legally contract and raise money to procure a water supply for fire hydrants, school buildings and drinking fountains and agree to pay a sum equivalent to taxes in part payment of water rent, as provided in the contract in question. Dillon, Mun. Corp. § 146; Tiedeman, Mun. Corp. § 175; *Town of Livingston* v. *Pippin*, 31 Ala. 542; *City of Rome* v. *Cabot*, 28 Ga. 50; R. S., c. 3, §§ 46, 59; c. 26; c. 18, § 71; *Gale* v. *Berwick*, 51 Maine, 177.

Contract not contrary to public policy.

The contract in question is not contrary to public policy, but is in accordance with the settled policy of our State, as shown in the history of its legislation for more than twenty years. An examination of the various water company charters granted by the legislature, will show that in almost every instance the authority has been delegated to towns and cities to enter into contracts with such companies for a supply of water, and for such exemption from public burdens as the city or town and the company might agree.

The town, in exercising this power, was contracting for the private benefit of itself and its inhabitants, and is governed by the same rules that govern a private individual or corporation. *Ill. Trust, etc., Bank* v. *City of Arkansas City,* 76 Fed. R. 282.

In contracting for waterworks to supply itself and its inhabitants water, the city or town is not exercising its governmental powers, but its business or proprietary powers. "The purpose of such a contract is not to govern its inhabitants, but to obtain a private benefit for the city itself and its denizens." 1 Dill. Mun. Corps. § 27; *City of Cincinnati* v. *Cameron,* 33 Ohio St. 336, 367; *Safety Insulated Wire & Cable Co.* v. *Mayor, etc., of Baltimore,* 13 C. C. A., 375, 377, 378, (66 Fed. R. 140, 143, 144); *Com.* v. *City of Philadelphia,* 132 Pa. St. 288; *City of Vincennes* v. *Citizens' Gas Light Co.,* 132 Ind. 126; *In re Binghampton Bridge,* 3 Wall. 51, 75; *Cartersville, etc., Co.* v. *Cartersville,* 89 Ga. 683; *Utica Water Works Co.* v. *Utica,* 31 Hun, 431; *Luddington, etc., Co.* v. *City of Luddington,* 78 N. W. Rep. 558; *Chenango Bridge Co.* v. *Binghampton Bridge Co.,* 3 Wall. 51.

In defense of the second case, the action to recover the tax assessed against the Water Company, the same counsel argued:

Under the contract made by the town of Winterport with the Winterport Water Company, it ought to be debarred from maintaining this action.

By the charter of the Water company, the town was authorized to make any agreement for exemption from public burdens as the town and the company might agree upon, which when made was to be legal and binding upon the parties thereto. Although the town, subsequent to the action of the annual town meeting held in March, 1896, held another town meeting and authorized a written contract, yet the exemption from taxation voted by the town, in favor of the water company in 1896 was never reconsidered, and still stands as the vote of the town.

The town agreed to pay the sum of one thousand dollars per year during the period of 20 years for the use of 20 hydrants, and such further sum each year as would equal the amount of tax, if any, assessed against the company.

The town did not contemplate at that time the assessment of any tax against the Water company and its property. In consideration of the agreements of the company, exemption of the Water company from taxation was a legal exemption. *City of Portland* v. *Portland Water Company*, 67 Maine, 135.

Under the terms of this contract the town should apply the water rental it agreed to pay, in excess of one thousand dollars, in satisfaction of such tax assessed against the company.

The vote of the town in March, 1896, to exempt this property from taxation, and the agreement executed by the town on the ninth day of May, 1896, should be construed together; and the amount due from the town for water rental, equal to the amount of the tax assessed for the year, should be applied by the town in satisfaction of the tax, without compelling the parties to resort to their several actions.

The terms of the contract show that the parties to this controversy estimated the value of this water plant to the town, if constructed, and being competent to contract, concluded that it was but fair to setoff the water rental, in excess of one thousand dollars for hydrants, against any taxes assessed, by the town.

But should it be determined by the court that it was not the duty of the town to apply this additional water rental, provided for in the contract, in satisfaction of the annual tax, then we have a legal claim under the contract for water rental equal to the amount of the annual tax assessed against the company for that year, and that question is distinctly raised in the first case.

*Chas. A. Bailey; R. F. and J. R. Dunton*, for Winterport.

Counsel argued in favor of the tax suit.

It is probably too late in the history of the law in this state, to deny the power of the Legislature to authorize towns, for a valid consideration, to enter into a contract with water companies for an exemption from taxes. *Portland* v. *Portland Water Co.*, 67 Maine, 135.

It is noticeable, however, that immediately following that decision, the Legislature passed the act, Laws 1878, c. 33, now incorporated in R. S., c. 6, § 6, Art. 10 ; " The aqueducts, pipes and

conduits of any corporation, supplying a town with water, are exempt from taxation, when such town takes water therefrom for the extinguishment of fires without charge. But this exemption does not include therefrom, the capital stock of such corporation, any reservoir or grounds occupied by the same, or any property, real or personal, owned by such company or corporation, other than as herein above enumerated."

This act, evidently, was intended to make a general application of the principles of the case above referred to, to all water companies, and expresses the legislative judgment of what are fair equivalents, when any water company asks for exemption from taxation, to wit: free water for the extinguishment of fires— exemption of pipes, aqueducts and conduits.

But under the doctrine of that case, notwithstanding this general declaration, it is doubtless competent for the state to legislate specially in favor of any particular company touching the matter of tax exemption.

If we concede here that the provisions of the act of 1895, c. 25, § 8, supersede the general law relating to exemption, still being in derogation of common right, and an express delegation of sovereign power, it is to be construed not only strictly, but strictissime. The instrument produced by the Water Company is in no sense a contract of the parties under the legislative power relied on. It is, therefore, as an instrument of defense to the tax suit that we wish to consider it.

All the proceedings of the parties bearing upon relief of the water company from taxation must be looked at through the enabling act above cited.

The vote of the annual meeting of 1896 "Voted, to exempt it from taxation" is too indefinite. This vote is not in any sense a contract; and the town, under the special authority given, if bound at all, must be bound by contract. Unless this vote is incorporated into a contract it stands as a purely gratuitous offer on the part of the town. "Exemption from taxation made through motives of public policy for which no consideration is given are not contracts." 25 Am. & Eng. Ency. of Law, 52; Cooley on Taxation, (2nd Ed.) 69.

At the time of the vote of exemption referred to, the company had no property; the vote is not to exempt property which the company may thereafterward acquire, nor improvements to be made; nor to exempt the company, eo nomine, from taxation; but simply to exempt the stock and property of the company. Whether this vote was sufficient, as expressed, to comprehend all the property which the company, thereafterward for twenty years, might acquire, and all stock holdings in that town during the same time, provided a formal contract had been made embracing its terms, we may not stop to inquire, inasmuch as it is manifest that that vote never entered into the contract which is under discussion.

The action of the town at the meeting which passed the vote of exemption, March 13, 1896, must be held to have reference solely to obtaining a municipal water supply, for a consideration to be paid for the same. The enabling act, ex vi termini, restricted it to that action alone.

When this second proposition of the company was acted upon by the town, April 22, any further consideration of the former action of the town, or any part of it, was absolutely at an end. A new and substituted basis, whatever it was, was there given on which to found the contract. And the contract itself shows that it was intended to be upon this new basis, in accordance with the vote of instruction to the committee then passed. It could not, if it would, embody the action of the former meeting, or any part of it; and it shows upon the face of it that it did not, for in its provision relating to taxes, and that is the feature we are dealing with now, instead of securing any positive exemption, it concedes the right of the town to levy taxes, reserving to the company only, in case of assessment, a corresponding increase in the annual water rate.

The article and vote both, it will be seen, contain the phrase "as per said company's proposal." This phrase to have any meaning, must be taken to mean, that at the meeting, the company would submit a proposition to furnish the town a twenty hydrant service with necessary specifications in detail, and ask the town to vote upon it.

In the vote of the town it must be taken to mean, that the town

has listened to the propositions of the company, and for all that is proposed, the town will give $1000 a year for the 20 hydrant service for the term of twenty years. Not $1000 plus some other sum; not $1000 and taxes added thereto, but just $1000.

And the law does not intend that the plainest proceedings of a simple town meeting shall be held to mean something different from what they express.

The contract is not executed in accordance with the power given. Being made under a special provision of the legislature, which not only prescribes the subject of the contract but also the manner in which it shall be executed, that mode must be strictly followed.

"Where the mode, in which the power of a municipal corporation upon any given subject can be exercised, is prescribed by its charter, that mode must be followed. The mode in such case constitutes the measure of power, and aside from the mode designated there is a want of all power on the subject." 15 Am. & Eng. Ency. of Law, 1042.

The provision authorizing this contract designates the selectmen of the town to execute the contract on the part of the town. It matters not that their duties are ministerial only. No other agents can perform that duty.

As tersely stated, by a modern text writer, "An act conferring special ministerial authority upon officers, in the exercise of which rights of property may be affected, or municipal liability incurred, must upon pain of vitiating the entire proceedings be strictly pursued." Endlich on Interpretation of Statutes, § 352.

"Whoever claims such exemption, must in obedience to strict construction, bring himself within both the letter and the spirit of the enactment." Ibid. § 356; 23 Am. & Eng. Ency. of Law, 399.

"Where the charter of the company requires contracts of a particular description to be in writing and signed by specified officers or approved in a specified manner, no agent can bind the company to a contract of that description unless it was executed in the manner prescribed." 17 Am. & Eng. Ency. of Law, 137.

Says Mr. Thompson in his valuable work on Corporations, "whatever may be the nature of the contract, sealed or unsealed, if the

charter or governing statute has prescribed a formality to be observed, that formality must be observed, or it will not be the contract of the corporation." 4 Thompson's Com. on Corp. § 5017.

Once it is admitted, that the power of exempting from taxation is exclusively sovereign power, it follows that every act tending towards the exercise of it is an act of sovereignty. That to whomsoever is delegated any power or duty relating to it, they become the agents of the state.

In this particular case the state saw fit to commit to the town of Winterport in its municipal capacity, a specially limited power —I think, perhaps, exceptionally so—the power to act, merely upon terms of an agreement—"in meeting the company," as Judge Cooley expresses it in his work on Taxation, page 69, "on the basis of bargain and consideration." This being done, the state steps in by its own appointed agents, the selectmen of the town, and does the rest. The town was to have, and can have, no agency in the formal execution of the contract. The appointment of the selectmen, eo nomine, for that duty was prohibitive of any appointment by the town. The state could just as well have designated any other agency; or failing to appoint, have devolved the duty by implication upon the town. But the all-controlling fact remains, that the selectmen were expressly named, and whatever the motive, this important function, of guarding the public interests in this final step of the proceedings, was not (in the suggestive phrase of Mr. Justice EMERY in *Thorndike* v. *Camden*, 82 Maine, 477) intrusted to " a friendly majority in a town meeting."

The error in this case manifestly lay in the assumption that this was the town's contract, not the state's, through its appointed agents; and I submit that both upon principle and authority the action of the town in the matter was ultra vires.

As to ratification, it is enough to say a town cannot ratify a contract it could not make. As stated by Dillon (3rd Ed.) § 463: "A municipal corporation may ratify the unauthorized acts and contracts of its agents and officers, which are within the corporate powers, but not otherwise." "Ratification," says PETERS, J., in *Lincoln* v. *Stockton*, 75 Maine, 147, "however proved, cannot

make good an act for which prior authority could not legally have been given, one without the scope of the corporate powers, or in excess of such powers in violation of law."

SITTING: EMERY, HASKELL, WISWELL, STROUT, SAVAGE, FOGLER, JJ.

HASKELL, J. An action of covenant broken for not paying $258, a sum equal to the tax assessed against plaintiff in 1897. Plea, non est factum, which puts in issue the validity of the deed containing the covenant sued.

On April 22, 1896, a town meeting was called, "To see if the town will vote to contract with the Winterport Water Company for not less than (20) twenty hydrants service, for not less than (20) twenty years, as per said Company's proposal."

It was: "Voted to pay the sum of $1000 per year, for not less than 20 years hydrant service, for not less than 20 years as per said company's proposal."

Thereupon the deed was executed by the parties, covenanting that defendant should pay the $1000 yearly rental and such further sum, each year, as shall equal the amount of tax, if any, assessed against defendant.

The defendant contends that the covenant sued was not authorized by vote of the town. True, the vote is imperfect, and perhaps fatally so, were it not aided by the article in the warrant under which it was taken. That article is to see if the town would contract for twenty hydrants service, for twenty years, as per Water Company's proposal. That proposal was in writing and read to the town, and upon its reading, the vote was passed. The proposal contained various articles, and the town may fairly be said to have adopted its provisions. The vote must have meant that, if anything. Surely, it could not have meant simply the payment of $1000 yearly rental without being secured the service carefully specified in the proposal. That was specific, and carefully worded, and has been embodied literally in the deed. All its provisions were proposed and must have been considered as the pending question upon which the vote was taken. We think,

taking the whole proceeding together, that the town meant to, and, in words not so comprehensive as may be wished, did adopt the entire proposal. Other acts of the town, were they competent here, might strengthen this view, but, although they are in evidence, we do not think it best or necessary to consider them.

At the same meeting, under an article to see if the town would choose and empower a committee to execute the deed in behalf of the town, such committee was chosen and so executed the deed.

It is contended that the charter of defendant, Special Act 1895, c. 25, authorized defendant to contract for water supply, by its selectmen only, and not by a committee as here. Defendant town did not contract by a committee. It contracted itself, and authorized a committee to execute the contract in the name of the town. The subject matter of the contract was a municipal function, authorized by statute, that it might act upon directly, by vote, and cause its chosen agents to execute its action in its name. To be sure, the letter of the statute is "authorized, by its selectmen, to enter into contract, with said company for a supply of water." One construction may be that the selectmen might negotiate and conclude such a contract, and execute it in behalf of the town. Under this construction, no other method could be adopted, for the selectmen alone are given the power, and no one else. But the better construction is, that the town itself may contract, and that it may execute its contract by the selectmen, if it pleases. The method is permissive, not exclusive. Suppose the selectmen be incapacitated by sickness, or a majority of them be absent, or refuse to act, shall the town be prohibited from the exercise of its function by mischance, misfortune or the perversity of its selectmen? Shall the agent veto the act of his principal? It is more reasonable to say, that the town may act through the agency named, if it shall please, or by any agent that it may authorize for the purpose. The town is to act, not the selectmen, unless directed by the town to do so. The town did act, and voted the contract submitted to its meeting. Upon a proper article in its warrant, it chose a committee to execute the contract, in its name, that it had already adopted. This case resembles, in many particulars, *George* v. *School Dist.*

*in Mendon*, 6 Met. 497. There the district voted to build a school house, and chose a committee to make a contract therefor according to a proposal submitted. The meeting adjourned to a future day. Meantime, another meeting was called and held, and the town voted to build upon a new plan then proposed, and chose a committee to make the contract, and it was held that the contract so made was valid, and also that it rescinded the former vote. See *Nobleboro* v. *Clark*, 68 Maine, 87; *Haven* v. *Lowell*, 5 Met. 35; *Murdough* v. *Revere*, 165 Mass. 109; *Curtis* v. *City of Portland*, 59 Maine, 483.

Where the mode to contract, named in a statute is permissive merely, no good reason can be given why other modes may not be employed. If the mode be exclusive, that mode alone should be followed. One test is, to see if the act of the agent be ministerial only, for there he has no discretion, and is to merely carry into effect the will of his principal. If, however, he is to exercise judgment, so as to determine any rights of the principal, then his judgment is made an element in the transaction, and it cannot be consummated without it. In the case at bar, the town was authorized to contract for water. The contract was to be the town's contract, made by it. The selectmen had no official voice in the matter. They were permitted to execute the will of the town, if ordered to do so. No reason has been given why another, chosen, should not act also. We think the contract valid.

*Defendant defaulted.*

---

WINTERPORT *vs.* WINTERPORT WATER COMPANY.

*Defendant defaulted.*

EMERY, J., concurred in this case, but not in the first case.

EMERY, J. My views are these:—When the legislature imposes a public duty on a municipality or other public agency, the prescribed means and modes may often be regarded as directory only. When, however, the legislature merely confers a

power or privilege, without duty, upon a municipality or other legislative creature, then the prescribed means and modes are express limitations upon the power or privilege and must be strictly followed whatever the inconvenience. 23 Am. & Eng. Ency. Law 458, 465, and cases there cited. The statute in question here merely confers a power or privilege, without duty, upon a legislative creature. The legislature expressly, in terms, prescribed the particular agency by which the town was authorized to enter into a contract, viz., "by its selectmen." We must assume that the legislature prescribed this particular agency advisedly and for a purpose. It may have intended thereby to impose checks and delays upon municipal action, but, no matter what the purpose, those words were inserted in the statute and all the inconveniences and delays they occasion must be borne if the parties desire to avail themselves of the statute. To my mind the majority opinion is not supported by the cases cited, and its practical effect is to expunge from the statute words the legislature saw fit to insert, and to remove from the legislative grant a limitation the legislature saw fit to impose. I think this is beyond the legitimate power of the court, and hence that the Water Company is confined to its quantum meruit.